ANTOINETTE ABEL [1] v. CITY OF MINNEAPOLIS and Others.[2]

April 30, 1897.

Nos. 10,153—(10).

## Municipal Corporation—Change of Grade—Damages.

In the absence of any express statutory or constitutional authority, an action will not lie in this state against a municipal corporation for consequential injuries to property caused by a change of the legally established grade, where such grading is done in a proper manner. *Held*, however, that Sp. Laws 1885, c. 5, is applicable to property situate in the city of Minneapolis, and authorizes the assessment of damages in such case in the manner therein provided.

## Same—Statutory Remedy.

Where a statute gives a right and creates a liability which did not exist at common law, and the statute at the same time provides a specific mode in which such right may be asserted and liability ascertained, the injured party is confined to the statutory remedy.

## Same—Assessment—Procedure—Presumption—Sufficiency of Evidence.

Where commissioners are appointed to assess damages by reason of a change in the grade of a street, under Sp. Laws 1885, c. 5, they are authorized to view the premises and hear the evidence offered, and may use such evidence as a guide and aid, and the presumption is that they proceeded rightly and according to the statute until the contrary appears. *Held* also that, assuming, without deciding, that the evidence in proceedings of this nature is properly before us, the award was justified by the evidence bearing upon the question of damages to the buildings, which, under the terms of the statute, are the only damages to which the relator was entitled.

[1] MARY BUTLER v. CITY OF MINNEAPOLIS and Others.

April 30, 1897.

Nos. 10,152—(9).

Certiorari by Mary Butler against the city of Minneapolis and others. Writ quashed.

*Jonas Guilford* and *Merrick & Merrick*, for petitioner.

*Frank Healy*, City Attorney, for respondents.

BUCK, J. The case involves the same questions as those raised in the case of Abel v. City of Minneapolis, 70 N. W. 851, and is governed by the decision made therein.

Writ quashed.

[2] Reported in 70 N. W. 851.

Certiorari, on the petition of Antoinette Abel, to the mayor, common council and city clerk of Minneapolis to review the proceedings of the council and of the commissioners appointed by the council in the matter of raising, altering and changing the grade of Main street northeast in that city, so far as they relate to the land of petitioner. Writ quashed.

*Jonas Guilford* and *Merrick & Merrick*, for relator.

The method of ascertaining damages contained in Sp. Laws 1885, c. 5, is void for the reason that the legislature attempts to deprive relator of an interest in lands by a method wholly political, when the method should have been judicial. Relator has a right to the supervision of a court, and the legislative branch of a government can not deprive the judicial branch of its functions. The city council, or the board appointed by it, is made a judicial body and no appeal to the courts is given. Lewis, Em. Domain, § 313; Rhine v. McKinney, 53 Tex. 354. In the Texas case the court said: "It would not seem to be a fair and impartial mode to have the appointment" of the commissioners "made ex parte by the corporation to be benefited and in which appointment the owner of the property taken, and for the loss of which the constitution guarantees just compensation, has no voice and particularly where there is no remedy given by appeal to have the award of the commissioners reviewed." "Whenever the use of the lands is restricted in any way, or some incorporeal hereditament is taken away which was appurtenant, it constitutes as much a taking as if the land itself had been appropriated." Tied. Mun. Corp., § 239. This court has held that in this class of cases there is no remedy, on the theory that every person who purchases a lot does so with the knowledge that the grade may be lowered or raised, and that the result as to him is therefore damnum absque injuria. Lee v. City, 22 Minn. 13; Henderson v. City, 32 Minn. 319. This doctrine is unsound and should be overruled.

*Frank Healy* and *L. A. Dunn*, for respondent.

By the decision of this court in Henderson v. City, supra, the "owner of property adjacent to a public street is not entitled to a remedy for injuries resulting from the exercise, in a proper manner, of lawful authority in establishing or changing the grade of a street," and such changing of a grade is not a taking of property within the

meaning of our constitution. In the absence of a constitutional provision broad enough to cover such damages to property, the remedy, if any, must come from the legislature. That the legislature had power to create the right to such damages no one will deny. The right, and the remedy by which to enforce it, may then be granted upon such terms, and under such conditions and limitations, as the legislature may see fit to impose. "Where a statute gives a right and creates a liability which did not exist by common law, and the statute at the same time provides a specific mode in which such right shall be asserted and liability ascertained, that mode and that alone must be pursued." Cole v. City, 14 Iowa, 296; State v. Sayre, 41 N. J. L. 158; Wilbur v. Taunton, 123 Mass. 522; Heiser v. Mayor, 104 N. Y. 68.

BUCK, J. The proceedings in this matter are brought here for review on a writ of certiorari.

The petitioner, Antoinette Abel, has for many years been the owner of a tract of land composed of parts of two lots having a frontage of 34 feet on Main street northeast in the city of Minneapolis. This tract is 165 feet in depth, and has upon it a wooden, two-story dwelling. Prior to the time of the proceedings complained of, the common council of the city of Minneapolis had established a grade in said street in front of said tract of land. Subsequently the legislature enacted a law, Sp. Laws 1885, c. 5, providing for a change of grade of the streets in said city, and by its terms, in case of permanent buildings having been erected upon a lot abutting upon the street so graded, the owner thereof may file with the city clerk, within 20 days after such city council shall vote to change the grade in front of such permanent building, notice that he will claim damages by reason of such change of grade in front of said building, giving a description of land upon which the same stands, together with the amount of the value of such building in his judgment, and the amount of damages which such change of grade will in his judgment cause to said permanent building; which notice shall be sworn to and shall be accompanied by the certificate of the building inspector of said city of the value in his judgment of such permanent building, and of the damages which in his judgment such grade will cause to said permanent building; and said building inspector shall examine said building and said change of grade, as so voted,

and make said certificate on the request of such owner of such building.

It is also therein provided that, if the city council deem it unwise to change the grade of such street on account of damages claimed, it may reconsider the vote by which such change of grade was made; but, if no such reconsideration is made within a certain time, five freeholders of said city are to be appointed by said city council to view the premises, and to ascertain and award the amount of damages and compensation to be paid to the owners of such permanent buildings who have filed such sworn notices and certificates of such building inspector, and to assess the amount of such damages and compensation upon the lands and property to be benefited by such improvement, in proportion to the benefits to be received by each parcel and without regard to a last valuation. The commissioners are then authorized to proceed as follows:

"They shall give notice by two publications in the official paper of said city, that they will, on a day designated in such notice, which shall be at least ten days after the first publication of such notice, meet at a place designated in said notice on or near the buildings which it is claimed shall have been damaged by such change in the grade of such street, and view the same, and ascertain and award therefor compensation and damages, and view the premises to be benefited by such improvement, and assess thereon, in proportion to benefits, the amount necessary to pay such compensation and damage, and that they will then and there hear such allegations and proofs as interested persons may offer. And such commissioners shall meet and view the premises pursuant to such notice, and may adjourn from time to time after having viewed the premises; may, for the hearing of evidence and the preparation of their award and assessment, adjourn or go to any other convenient place in said city, and may have the aid and advice of the city engineer and of any other officer of the city.

"After viewing the premises, and hearing the evidence offered, such commissioners shall prepare and make a true and impartial appraisement and award of the compensation and damages to be paid to each person whose building shall have been damaged by such change of grade of such street. But if the remainder of the property on which said buildings stand, or the remainder of the lot or parcel connected therewith, shall be benefited by such change of grade of such street, then the commissioners, in considering and awarding compensation and damages, shall also consider, estimate and offset the benefits which will accrue to the same owner in respect to the remainder of the

same property, and award him only the excess of the compensation or damages over and above such benefits. These said commissioners shall then assess the amount of such compensation and damages so awarded upon the land and real property benefited by such change of grade, and in proportion to such benefits, but in no case shall the amount of said assessment exceed the actual benefit to the lot or parcel of land, or other real property so assessed, deducting therefrom any damages or injuries to the same parcels which are less than such benefits, and assessing only the excess, and prepare and report to the city council their appraisement and award, and if, in the judgment of said commissioners, the whole amount of such compensation and damages, together with the cost of making such improvement, shall exceed the actual benefit to the specific property subject to assessment, they shall so indicate in their report, and shall state the amount of such excess."

When the report is returned to the city council, it may confirm or send it back for further consideration, and in such case the commissioners may give further notice of the time and place of such consideration, and hear evidence and correct mistakes, if any; and, when such report is returned and filed, and confirmed, the award is final, there being no appeal allowed therefrom. No greater award can be allowed than the amount claimed in the sworn notice. Under this law, and in compliance therewith, the city council of the city of Minneapolis changed the grade in Main street northeast in front of the petitioner's tract of land hereinbefore described, and in doing so raised the street about $17\frac{1}{2}$ feet, destroying the sidewalk built by her, and making it impossible for her to have access to her lot or building from said street. The commission awarded her $750 damages on account of such change in the grade.

One of the grounds upon which the petitioner challenges the validity of the proceedings is that Sp. Laws 1885, c. 5, is unconstitutional, in that the legislature attempted to establish an unwarranted and political method of ascertaining such damages, and not by judicial process. But the law is nearly uniform that an action will not lie at all against a city for consequential injuries to property caused by a change of the legally established grade, even where the changed grade of a street is raised to such a height in front of the owner's property as to prevent access to it from the street. Henderson v. City, 32 Minn. 319, 20 N. W. 322, and authorities cited. This rule is too well settled to be disturbed, unless by legislative enactment. The petitioner, there-

fore, did not have any constitutional or valid right to any damages by reason of the raising of the grade in front of her property, except through the legislative enactment, viz., Sp. Laws 1885, c. 5. No liability existing at common law or under the constitution in behalf of the petitioner against the city in such case, the affirmative remedy which was conferred upon her came from the statute which we have quoted. This right was not a cumulative, but a new one.

The petitioner contends that it is the remedial part of the law which is so objectionable and unconstitutional, and that it deprived her of the right of trial by a jury and an appeal to a judicial tribunal for a determination of her legal right to have such damages assessed. But she is seeking a remedy through the power conferred by the statute. If there was no liability at common law or under the constitution on the part of the city, she, of course, would have no right to a jury trial. Now, the law is well settled that, where a new right or the means of acquiring it is given, and an adequate remedy is furnished for enforcing it in the same statute, then the injured party is confined to the statutory remedy; or, in other words, the well-known principle applies that, where a statute gives a right and creates a liability which did not exist at common law, and the statute at the same time provides a specific mode in which such right shall be asserted and liability ascertained, that mode and that alone must be pursued. Cole v. City, 14 Iowa, 296. See, also, Heiser v. Mayor, 104 N. Y. 68, 9 N. E. 866. As the petitioner's rights are defined by statute, she must be governed by it as to the method of their enforcement, or she has no remedy at all in this respect; for this mode is exclusive.

Fraud or irregularity is not charged. The statute confers upon the petitioner the right to appear before the commissioners and offer evidence of the damages which she sustained by reason of such change of grade. This she did, and there is no claim that she was debarred from introducing all the evidence which she desired. She fully participated in the trial or hearing upon the matter of her damages before the commissioners, and no error of law is assigned as to the admission or rejection of evidence. The city offered no evidence in opposition to that of the petitioner. The commissioners are authorized to view the premises, and ascertain the damages, and make compensation.

Assuming, without deciding, that the evidence taken before the com-

missioners is properly before us, and that we have the right to examine and consider it in reviewing, on certiorari, proceedings of this nature, we are of the opinion that the award was justified by the evidence bearing upon the question of damages to the buildings, which, under the terms of the statute, are the only damages to which the relator was entitled. The presumption is that the commissioners proceeded rightly and according to the statute until the contrary appears.

Writ quashed.